# 24-1236

## United States Court of Appeals
## for the Second Circuit

Valentin Khazin,

*Plaintiff-Appellant,*

Lawrence Hawkins,

*Plaintiff,*

*against*

The City of New York, Sylvester Ge, John Sanford,
Jonathan Lipke, Marc Levine, Stephen Brathwaite,
Vincent Greany, Michael Lau, Michael Diaz, and
Daniel Brown,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Eastern District of New York

## BRIEF FOR APPELLEES

Muriel Goode-Trufant
*Acting Corporation Counsel
of the City of New York*
Attorney for Appellees
100 Church Street
New York, New York 10007
212-356-3551
jlerner@law.nyc.gov

Richard Dearing
Rebecca L. Visgaitis
Jennifer Lerner
*of Counsel*

November 20, 2024

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES................................................................iii

PRELIMINARY STATEMENT...........................................................1

ISSUE PRESENTED FOR REVIEW..................................................3

STATEMENT OF THE CASE............................................................4

    A. NYPD's disciplinary measures and its rules regarding
    off-duty employment..........................................................4

    B. Khazin's assignment to the Highway District and his
    refusal to follow instructions about supervising Officer
    Harge..................................................................................6

    C. The investigation into Khazin's unauthorized off-duty
    employment and related discipline ...................................8

    D. Khazin's EEO complaints and placement on
    performance monitoring at the 9th Precinct..................11

    E. Khazin's continued misconduct, leading to his
    suspension and placement on modified assignment.......14

    F. This action and the dismissal of all claims on summary
    judgment ..........................................................................16

STANDARD OF REVIEW AND SUMMARY OF ARGUMENT .....18

ARGUMENT...................................................................................22

    THE DISTRICT COURT PROPERLY GRANTED
    SUMMARY JUDGMENT TO DEFENDANTS......................22

    A. Summary judgment was properly granted on Khazin's
    Title VII retaliation and constructive discharge claims...25

i

# TABLE OF CONTENTS (cont'd)

**Page**

1. Khazin failed to make out a prima facie case of retaliation for actions prior to his June 2016 complaint. ................................................................... 25

2. Khazin failed to make out a prima facie case of retaliation for actions after his EEO complaints. ....... 30

3. Khazin failed to show that defendants' legitimate reasons for the challenged actions were pretextual. ... 35

4. Khazin's constructive discharge claim also fails. ........ 38

B. Summary judgment was properly granted on Khazin's State and City Human Rights Law claims. ...................... 40

CONCLUSION .................................................................. 44

CERTIFICATE OF COMPLIANCE ................................................. 45

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Banks v. GM, LLC,*
    81 F.4th 242 (2d Cir. 2023) ......................................... 23

*Bendeck v. NYU Hosps. Ctr.,*
    77 A.D.3d 552 (1st Dep't 2010)................................. 42, 43

*Bowen-Hooks v. City of N.Y.,*
    13 F. Supp. 3d 179 (E.D.N.Y. 2014) ................................ 41

*Brightman v. Prison Health Serv., Inc.,*
    108 A.D.3d 739 (2d Dep't 2013)..................................... 43

*Burlington Northern & Santa Fe Ry. Co. v. White,*
    548 U.S. 53 (2006)................................................ 17, 20, 41

*Campbell v. N.Y.C. Tr. Auth.,*
    93 F. Supp. 3d 148 (E.D.N.Y. 2015), *aff'd*, 662 F. App'x
    57 (2d Cir. 2016)........................................................ 33

*Carr v. N.Y.C. Transit Auth.,*
    76 F.4th 172 (2d Cir. 2023) .............................. 21, 22, 23, 25, 28, 35

*Cayemittes v. City of N.Y. Dep't of Hous. Pres. & Dev.,*
    974 F. Supp. 2d 240 (S.D.N.Y. 2013), *aff'd*, 641 F. App'x
    60 (2d Cir. 2016)........................................................ 32

*Cifarelli v. Vill. of Babylon,*
    93 F.3d 47 (2d Cir. 1996) .............................................. 42

*Matter of Clifton Park Apts., LLC v. N.Y. State Div. of
Human Rights,*
    41 N.Y.3d 326 (2024) .................................................. 41

*Coal. on W. Valley Nuclear Wastes v. Chu,*
    592 F.3d 306 (2d Cir. 2009) .......................................... 41

*Galdieri-Ambrosini v. Natl. Realty & Dev. Corp.,*
    136 F.3d 276 (2d Cir. 1998) .......................................... 26

*Green v. Dept. of Educ. of N.Y.,*
    16 F.4th 1070 (2d Cir. 2021) ......................................... 19

*Gross v. Rell,*
    585 F. 3d 72 (2d Cir. 2009) ........................................... 20

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Harge v. City of N.Y.,*
No. 21-2293, 2022 U.S. App. LEXIS 33637 (2d Cir. Dec. 7, 2022) .................................................................. 7

*Hicks v. Baines,*
593 F.3d 159 (2d Cir. 2010) .................................... 19, 22, 30, 37, 40

*Kwan v. Andalex Group, LLC,*
737 F.3d 834 (2d Cir. 2013) ............................................ 24

*Kwong v. City of N.Y.,*
204 A.D.3d 442 (1st Dep't 2022) .................................... 41

*Major League Baseball Props., Inc. v. Salvino, Inc.,*
542 F.3d 290 (2d Cir. 2008) ............................................ 19

*Maraschiello v. City of Buffalo Police Dept.,*
709 F.3d 87 (2d Cir. 2013) .............................................. 19

*McElwee v. County of Orange,*
700 F.3d 635 (2d Cir. 2012) ............................................ 35

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,*
715 F.3d 102 (2d Cir. 2013) ........................................ 24, 42

*Natofsky v. City of New York,*
921 F.3d 337 (2d Cir. 2019) ........................................ 18, 26

*Niagara Mohawk Power Corp. v. Hudson Riv.-Black Riv. Regulating Dist.,*
673 F.3d 84 (2d Cir. 2012) .......................................... 20, 40

*Phillips v. Fashion Inst. of Tech.,*
No. 23-375, 2024 U.S. App. LEXIS 5615 (2d Cir. Mar. 8, 2024) ...................................................................... 41

*Reichman v. City of N.Y.,*
179 A.D.3d 1115 (2d Dep't 2020) .................................... 43

*Rojas v. R.C. Diocese of Rochester,*
660 F.3d 98 (2d Cir. 2011) .............................................. 26

*Sanderson-Burgess v. City of N.Y.,*
173 A.D.3d 1233 (2d Dep't 2019) .................................. 42, 43

iv

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Serricchio v. Wachovia Sec. LLC,*
    658 F.3d 169 (2d Cir. 2011) ........................................................... 39

*Shultz v. Congregation Shearith Israel,*
    867 F.3d 298 (2d Cir. 2017) ........................................................... 39

*Slattery v. Swiss Reinsurance Am. Corp.,*
    248 F.3d 87 (2d Cir. 2001) ............................................................. 32

*Vega v. Hempstead Union Free Sch. Dist.,*
    801 F.3d 72 (2d Cir. 2015) ............................................................. 23

*Villavicencio v. Gure-Perez,*
    56 F. Supp. 3d 178 (E.D.N.Y. 2014) ............................................. 27

### Statutes and Rules

42 U.S.C. § 1983 .................................................................................. 22

42 U.S.C. § 2000e-3(a) ....................................................................... 22

Fed. R. App. P. 28(a) .......................................................................... 19

Fed. R. App. P. 30(b) ...................................................................... 7, 12

Fed. R. Civ. P. 56(a) ........................................................................... 19

N.Y.C. Admin. Code § 8-107(7) ........................................................ 22

N.Y. Exec. Law § 296(7) ................................................................... 22

## PRELIMINARY STATEMENT

Plaintiff-appellant Valentin Khazin, a former NYPD sergeant, faced discipline for several acts of misconduct, including filing false criminal allegations against his supervisor and working at outside jobs without authorization. In this action, he accuses defendants of retaliating against him based on two alleged protected activities: first, for refusing to discriminate against another officer, and second, for filing retaliation complaints on behalf of the other officer and himself. Khazin contends that he faced unjust discipline, performance monitoring, tour changes, and denial of overtime, among other allegedly adverse actions. He further contends that he was constructively discharged when he resigned because of the alleged retaliation.

Khazin brought his retaliation claims under Title VII, Section 1983, the New York State Human Rights Law (NYSHRL), and the New York City Human Rights Law (NYCHRL). The United States District Court for the Eastern District of New York (DeArcy Hall, J.) granted summary judgment to defendants, finding that Khazin had failed to raise a genuine issue of material fact and had failed to make out a prima facie case of retaliation. This Court should affirm.

As to Khazin's retaliation claim under Title VII, summary judgment was proper for several reasons. First, Khazin's contention that

he faced retaliation for refusing to discriminate against another officer cannot support a prima facie case because Khazin never communicated at the time that his failure to follow his superiors' instructions was based on a belief that the instructions were discriminatory. Second, much of the discipline that Khazin faced arose out of an independent investigation into his off-duty employment that began well before he filed his first complaint, precluding any causal connection to his protected activity. Third, Khazin failed to present any evidence connecting later allegedly retaliatory actions to his protected activity, and he cannot show that some of the actions he complains of amounted to any more than trivial harms.

Further, even if Khazin could meet his initial burden, he failed to demonstrate that the City's explanation for the alleged retaliatory conduct was pretextual. Defendants explained that they took legitimate disciplinary actions against Khazin based on his violations of NYPD's rules. In response, Khazin presented affidavits with only conclusory assertions that do not satisfy his burden to bring forward some evidence of pretext. And as to his claim of constructive discharge, Khazin failed to raise an issue of triable fact that could show work conditions so intolerable that a reasonable person would have felt compelled to resign.

Khazin has abandoned his remaining claims by failing to even mention them in his brief or giving them only cursory treatment. And even if Khazin had not abandoned his NYSHRL and NYCHRL claims, they would lack merit. His NYSHRL retaliation claim fails alongside his Title VII claim because it is governed by the same standard. And even under the NYCHRL's more liberal standard for retaliation claims, Khazin failed to raise any genuine issue of fact that could allow a reasonable juror to find in his favor. Khazin failed to show any causal connection between his protected activity and defendants' allegedly retaliatory actions, and he failed to present evidence to show that defendants' legitimate reasons for their actions were pretextual.

## ISSUE PRESENTED FOR REVIEW

Did the district court properly grant summary judgment to defendants on Khazin's retaliation claims where Khazin failed to make out a prima facie case of retaliation and, even assuming a prima facie case, he failed to show that defendants' legitimate non-retaliatory reasons for their actions were pretextual?

## STATEMENT OF THE CASE

### A. NYPD's disciplinary measures and its rules regarding off-duty employment

The NYPD utilizes various disciplinary measures to address improper conduct and violations of rules by its officers (*see* Joint Appendix ("A") 769-70). A command discipline ("CD") is a written disciplinary measure that can result in the loss of vacation days (A769). There are three types of CDs: an "A" CD, which can result in the loss of up to five days; a "B" CD, which can result in the loss of up to 10 days; and a "C" CD, issued only by the Department Advocate's Office, which determines the appropriate penalty (*id.*).

If an officer opts not to accept a CD and recommended penalty, the matter will proceed to the Department Advocate's Office for its review and the issuance of charges and specifications (A769-70). After charges and specifications are issued, the Department Advocate will contact the officer and the officer's legal representation to discuss adjudication of the charges (A770). If the charges and specifications are not settled, the matter will proceed to a departmental hearing (*id.*).

Additionally, an officer may be suspended when they are served with charges and specifications, or if they have participated in an act of serious misconduct, and the ranking officer in-charge of investigation

determines that disciplinary action will be taken or is being contemplated (A795).

Discipline may result from an officer's failure to follow the NYPD's departmental rules regarding off-duty employment (A775). NYPD uniformed members of service are not permitted to work off-duty employment without prior written supervisory approval (A774). To obtain such approval, a uniformed member must fill out an off-duty application listing the hours to be worked, entering the name of the employer, and providing a description of the employer and the duties of the sought-after employment (*id.*). Thereafter, the applicant's commanding officer interviews the applicant and determines if the conditions of the off-duty employment fall within departmental guidelines (*id.*). The commanding officer then confers with the applicant's direct supervisor and with the office of the First Deputy Commissioner to determine if there are disciplinary reasons to disapprove the application (A774-75). The commanding officer is tasked with signing the form either approving, disapproving, or making recommendations regarding the application (A775). Additionally, if the employment involves work in a security-related field, the commanding officer must forward the application to the borough commander, or counterpart, for approval or disapproval (*id.*).

5

An approved application for off-duty employment is only valid for one year, and uniformed members are required to submit renewal applications each year at least ten days before the approved application expires (A775, 846). They must also submit a new off-duty employment application if there is any change in the status of employment (A775).

### B. Khazin's assignment to the Highway District and his refusal to follow instructions about supervising Officer Harge

In May 2015, then-Sergeant Khazin was assigned to the Highway District, a highly sought-after position in the NYPD (A764, 799). In August 2015, after completing a three-month training, Khazin was assigned to Highway District 3 (A764). He reported directly to defendant Lieutenant Marc Levine, and his commanding officer was defendant Captain John Sanford (A30, 764). As a sergeant, Khazin's duties and responsibilities included monitoring and supervising police officers, including Officer Dana Harge, a black male officer (A764-65).

After arriving at Highway 3, Khazin came to believe that Harge was being treated more harshly than other officers (A766-68). According to Khazin, he was instructed by Sanford and Levine to ensure that Harge had consistent work to do (A767). Additionally, defendant Inspector Sylvester Ge, Highway's Executive Officer, would monitor

Harge's timeliness and directed that Harge be closely supervised (A766). Khazin was also instructed that Harge's "lost time" (i.e., compensatory time off) had to be approved by Levine, or by defendants Lieutenant Stephen Braithwaite or Lieutenant Jonathan Lipke (A771-72, 803-04). Despite these instructions, Khazin granted Harge time off and allowed him to leave early (*id.*).

Although Khazin was aware that Harge had previously filed a discrimination complaint (A768, 802), he was apparently unaware of Harge's ongoing disciplinary issues (A766-67). The Internal Affairs Bureau (IAB) was investigating Harge following a complaint that he had sexually harassed a female motorist (*id.*; A236-239, 250-52, 335), and Harge was also being closely monitored to ensure that he was not missing traffic court, as he had on previous occasions (A268-69, 335-36, 340-41, 767). *See Harge v. City of N.Y.*, No. 21-2293, 2022 U.S. App. LEXIS 33637, at *4-5 (2d Cir. Dec. 7, 2022) (summary order).

Khazin was verbally reprimanded for violating his direct supervisor's instructions by allowing Harge time off (A771-72; EDNY ECF No. 89-4 at 105-06).[1] Khazin claims in this lawsuit that he did not

---

[1] Despite appellees' request, Exhibit A to the Dandrige declaration, consisting of excerpts from Khazin's July 12, 2018 deposition transcript (*see* A86), was omitted from the joint appendix. Accordingly, appellees cite the district court docket. *See* Fed. R. App. P. 30(b)(1).

7

follow these orders because he believed they were retaliatory based on Harge's prior discrimination complaint and his race (A768, 771). However, Khazin never communicated any such belief—or supposed basis for disregarding his superiors' instructions—until after he left Highway 3 and filed a complaint on Harge's behalf (A314-15, 402, 768, 771-72; EDNY ECF No. 89-4 at 96-97, 119-21).

On November 30, 2015, Khazin's tour was changed from the 5:00 a.m. to 2:00 p.m. tour to the 2:00 p.m. to 11:00 p.m. tour (A771). This tour change occurred after a November 28, 2015 incident where Khazin had failed to account for the whereabouts of an officer and inaccurately completed a form for lost time on his behalf, which Lieutenants Levine and Lipke told him was a falsification of records (A414, 772). About a month later, in January 2016, Captain Sanford returned Khazin to the 5:00 a.m. to 2:00 p.m. tour at his request (A772; EDNY ECF No. 89-4 at 108).

### C. The investigation into Khazin's unauthorized off-duty employment and related discipline

On December 7, 2015, Sergeant Georgia Madouros filed a complaint with IAB alleging that Khazin was working off-duty employment on job time and was using a police vehicle to do so (A407, 410, 777). Lieutenant Lipke, the Integrity Control Officer for Highway

3, was assigned to investigate for the Transportation Bureau Investigations Unit (A406, 773, 777). As Integrity Control Officer, Lipke's duties included conducting investigations of officers to ensure they were complying with NYPD policies and liaising with IAB on investigations (A773-74).

The investigatory report, issued by Lipke on March 31, 2016, recommended that Khazin be transferred out of Highway (A406-11, 778). Although the allegation that Khazin was working off-duty employment on job time was unsubstantiated, the investigation revealed that he was working off-duty at two different employers without the required department authorization.[2] The report also found that Khazin had been off-post and failed to supervise four officers during his assigned Veterans Day parade detail on November 11, 2015 (A409-11; *see* A774-75).

In order to address the potential discipline arising from the investigatory report, Khazin agreed to transfer out of Highway and to plead guilty to a "B" CD for which he would lose 10 vacation days (A248-49; EDNY ECF No. 89-4 at 113). On June 6, 2016, Khazin was

---

[2] In January 2016, while the investigation was already pending, Khazin submitted five applications for off-duty employment to Highway 3 (A780-81). However, these applications were not acted upon because of the open investigation into Khazin's conduct (*id.*).

9

transferred to the 9th Precinct, one of his top three choices (A640, 780, 817).

On August 22, 2016, the Transportation Bureau Investigations Unit issued the "B" CD, which included findings as to the unauthorized off-duty employment and the failure to supervise officers at the Veteran's Day parade, along with additional findings that Khazin had failed to account for the whereabouts of an officer under his command on November 28, 2015, and had conducted a vehicle stop on November 10, 2015 without notifying the Communication Division (A414-15, 778-80). Captain Vincent Greany, the commanding officer of the 9th Precinct, signed the CD, which recommended the loss of 10 vacation days, on September 28, 2016 (*id.*). Khazin accepted the findings and the proposed disciplinary action on October 5, 2016 (*id.*).[3]

Meanwhile, on June 2, 2016, Inspector Ge and Lieutenant Lipke were monitoring Khazin's vehicle movements and discovered that he was off-post at a bakery with Officer Harge for an extended period of time (A271-77, 284-95, 376-80, 418, 421-22, 505-19, 781-82). Neither Khazin nor Harge had reported they were off-post, and during that time, they failed to respond to a radio call indicating the existence of a

---

[3] Because Khazin accepted the findings and discipline, no charges and specifications were issued based on these matters (*see* A769-70).

dangerous condition in which a female was walking on the highway (*id.*). As a result of the investigation into this incident, on October 12, 2016, another "B" CD was issued against Khazin with a recommended penalty of the loss of five vacation days (A418, 782). Because Khazin declined to accept the findings and proposed discipline in this CD, the matter was referred for charges and specifications, which were issued in April 2017 (A421-22, 489-92, 522, 782-83).

### D. Khazin's EEO complaints and placement on performance monitoring at the 9th Precinct

A few weeks after his transfer to the 9th Precinct, on June 29, 2016, Khazin filed a complaint with NYPD's Equal Employment Opportunity (EEO) office alleging that Lipke was issuing unwarranted command disciplines to Harge because of Harge's prior EEO complaint (A768). Khazin did not allege at that time that he had faced any retaliation himself (*id.*). The EEO office investigated Khazin's complaint and concluded that it was unsubstantiated (A769).

Khazin filed a second complaint with NYPD's EEO office on November 1, 2016 (A783-84). This time, Khazin alleged that Ge, Lipke, and Greany were retaliating against him for filing the previous EEO complaint on behalf of Officer Harge (*id.*). He asserted that he was denied overtime after Lipke visited the 9th Precinct in September 2016,

11

and that Ge had issued him charges and specifications because of his prior complaint (A784).

On November 14, 2016, Inspector John Cosgrove, Commanding Officer of the Performance Analysis Section, issued a memo to the Commanding Officer of the 9th Precinct, Captain Greany, informing him that, as of November 7, Khazin had been placed on Level I Discipline Monitoring based on review of his disciplinary history and other records (A425, 522, 785). The memo required a plan of action to be submitted to the Performance Analysis Section (A425). Greany responded on November 29, 2016, detailing the measures being taken to improve Khazin's performance, including additional supervision and monitoring (A428, 522). Greany switched Khazin to the day tour to facilitate the increased supervision, which he also did for other members of his command on performance monitoring (A522, 785-86).

In December 2016, when he was interviewed in connection with his November EEO complaint, Khazin made additional allegations that he was being retaliated against in the 9th Precinct (A785; EDNY ECF No. 89-53 at 1).[4] He alleged that defendant Lieutenant Michael Diaz,

---

[4] Despite appellees' request, Exhibit WW to the Dandrige declaration, consisting of the EEO Investigating Officer's Report, dated March 3, 2017 (*see* A90), was omitted from the joint appendix. Accordingly, appellees cite the district court docket. *See* Fed. R. App. P. 30(b)(1).

Integrity Control Officer for the 9th Precinct, had placed him on Level I monitoring because of his EEO complaint, that defendant Lieutenant Daniel Brown knew of this allegedly unfair placement, and that defendant Lieutenant Michael Lau, his direct supervisor, monitored him and gave him undesirable assignments (EDNY ECF No. 89-53 at 1-2). Khazin also filed a complaint with the NYS Division of Human Rights on December 19, 2016 (*id.* at 3; A798).

The EEO office investigated Khazin's allegations and determined there was no evidence of retaliation (A789; EDNY ECF No. 89-53). As to being deprived of overtime, the EEO investigator found that other sergeants also experienced a decrease in overtime in September and October 2016, with an increase coming in November (A431; EDNY ECF No. 89-53 at 2; *see* A521-22). As to being placed on Level I Monitoring, the investigator found that Khazin's placement was authorized by the Commanding Officer of the Risk Mitigation Division, not by Diaz (EDNY ECF No. 89-53 at 3; *see* A425, 428, 522). Additionally, contrary to Khazin's allegation, Ge had not issued any charges and specifications against Khazin, and if any were subsequently issued, it would be because of his decision to decline the penalty from the October 12, 2016 "B" CD (EDNY ECF No. 89-53 at 4; *see* A418, 769-70). The investigator thus

13

found "no nexus between the prior and current EEO complaint to the alleged actions taken against Sgt. Khazin" (EDNY ECF No. 89-53 at 4).

On February 24, 2017, Khazin filed a third EEO complaint alleging that Diaz was retaliating against him for his prior EEO complaints by scrutinizing his overtime and holding his overtime slips so that he would not be paid or his payment would be delayed (A789). The EEO office investigated and found no evidence of retaliation (A458-59, 790). The investigator noted a discrepancy in the payment of two hours of overtime and referred Khazin to the payroll office to address this issue (A459).

### E. Khazin's continued misconduct, leading to his suspension and placement on modified assignment

In October 2018, an IAB investigation led to further disciplinary action against Khazin. During the investigation, Khazin admitted that, in September 2017, he had submitted an anonymous complaint to IAB falsely claiming that Lieutenant Lau, his direct supervisor at the 9th Precinct, had been involved in a hit and run accident while intoxicated (A462, 465-70, 473-79, 793-94). Khazin admitted that he had not witnessed the events detailed in the anonymous complaint, had no knowledge that they occurred, and had made unauthorized inquiries

using the NYPD's databases to come up with details for his anonymous complaint (A180-87, 462, 474).

Khazin also admitted that had engaged in off-duty employment while on sick report to the NYPD on nine separate occasions (A474, 737, 793).[5] He further admitted to engaging in additional off-duty employment without permission (A474). Khazin was issued charges and specifications for this misconduct, which were served on December 11, 2018, and amended with additional charges on January 30, 2019 (A477-78, 482, 498-501, 795-96).

On October 11, 2018, Khazin was suspended without pay for 30 days as a result of the IAB investigation (A473-79). After his 30-day suspension, Khazin was placed on modified assignment to the Housing Borough Bronx/Queens Viper 21 command, where his direct supervisor was defendant Lieutenant Lawrence Hawkins (A796-97).[6]

---

[5] In September 2017, Khazin obtained authorization for off-duty employment at American Airlines (A522-23, 791-92). Khazin admitted that he did not submit any application for off-duty employment in 2017 prior to this and had worked at American Airlines for a time without permission (EDNY ECF No. 89-3 at 20-25). The record does not include any evidence that Khazin submitted any other application for off-duty employment once assigned to the 9th Precinct.

[6] The dockets here and in the district court incorrectly show Lawrence Hawkins as a plaintiff. Hawkins was added as a defendant in the amended complaint, and he is a defendant-appellee here (*see* ECF No. 11 (submitting corrected caption); A12, 28, 30).

On November 26, 2018, Hawkins issued an "A" CD to Khazin for failing to account for a uniformed member of service on two days (A797-78). The recommended penalty was the forfeiture of one vacation day (*id.*). Khazin declined to accept the CD and penalty, so the matter was referred for charges and specifications, which were issued on March 6, 2019 (*id.*; A486-88).

On March 15, 2019, Khazin resigned from the NYPD (A798).

## F. This action and the dismissal of all claims on summary judgment

Khazin commenced this action on June 22, 2017 (A6). On February 21, 2020, after being granted leave, Khazin amended his complaint to include additional allegations and to add Hawkins as a defendant (A12, 28-55). The amended complaint asserted retaliation claims under Title VII, Section 1983, the New York State Human Rights Law (NYSHRL), and the New York City Human Rights Law (NYCHRL) as well as *Monell* claims (A48-55).

Defendants answered (A12, 58-79) and moved for summary judgment on all claims after completion of discovery (A12, 24, 81-93). Khazin opposed the motion as to his retaliation claims, but voluntarily withdrew his *Monell* claims (A24-25; *see* Special Appendix ("SA") 4 n.1).

16

Recognizing that Khazin's Title VII, Section 1983, and NYSHRL retaliation claims were all governed by the same standard, while his NYCHRL retaliation claim was to be reviewed more liberally (SA13-14), the district court granted summary judgment to defendants on all claims (SA4-23).

As to Khazin's claim of retaliation based on his alleged refusal to discriminate against Officer Harge at Highway 3, the court found that Khazin's failure to follow the directives of his supervisors could not be viewed as an informal protest that would have put defendants on notice that he was opposing discrimination (SA14-16). Khazin never complained about any allegedly discriminatory behavior prior to filing his complaint with NYPD's EEO office on June 29, 2016, and, in the absence of protected activity of which defendants were aware, Khazin's transfer from Highway 3 to the 9th Precinct earlier that month did not constitute retaliation (*id.*).

The district court further found that several of the purported adverse actions that Khazin allegedly faced at the 9th Precinct—his poor annual evaluation, the denial of his applications for a new position, denial of a training opportunity, and not being invited to commanding officer meetings—did not constitute materially adverse actions under *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)

(SA16-18). And as to the other allegedly retaliatory actions—delayed overtime payments, defendants' investigation into Khazin's off-duty employment, related discipline, and placement on Level I Monitoring—the court found that, even assuming they constituted materially adverse actions, Khazin failed to establish the requisite causal connection to his protected activity to establish a retaliation claim (SA18-21).

Finally, the district court found no support in the record for Khazin's claim that defendants' alleged retaliatory acts caused him to be constructively discharged when he resigned in March 2019 (SA21-22). Considering that four months had elapsed since the last evidence of any adverse action, a CD in November 2018, and that Khazin's last protected activity took place in February 2017, the court found the record devoid of any evidence that the defendants' action could be perceived as making Khazin's discharge a foregone conclusion (*id*.).

## STANDARD OF REVIEW
## AND SUMMARY OF ARGUMENT

This Court reviews the district court's grant of summary judgment de novo, construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in their favor. *Natofsky v. City of New York*, 921 F.3d 337, 344 (2d Cir. 2019). Summary judgment shall be granted "if the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To defeat summary judgment, the nonmoving party must proffer evidence showing a genuine factual dispute and may not rely upon "[m]ere conclusory allegations or denials" or unsubstantiated speculation. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 319 (2d Cir. 2008) ("Conclusory statements, conjecture, and speculation, are insufficient to create a genuine factual dispute.").

Here, this Court should affirm the judgment of the district court granting summary judgment to defendants because Khazin failed to raise a triable issue of fact on his retaliation claims. Initially, it is somewhat difficult to discern what issues Khazin seeks to press on appeal because he failed to include the required statement of the issues presented for review in his brief, Fed. R. App. P. 28(a)(5), and he offers only superficial argument, if any, on several of his claims. *See Green v. Dept. of Educ. of N.Y.,* 16 F.4th 1070, 1074 (2d Cir. 2021) (explaining that Rule 28(a) "requires appellants in their briefs to provide the court with a clear statement of the issues on appeal"). Khazin makes no mention at all of his Section 1983 cause of action, and he has therefore abandoned that claim on this appeal. *Maraschiello v. City of Buffalo*

19

*Police Dept.*, 709 F.3d 87, 92 (2d Cir. 2013). Further, his cursory argument on his state and city causes of action (*see* Appellant's Brief ("App. Br.") 37-38) is insufficient to preserve any issue as to those claims for this Court's review. *See Niagara Mohawk Power Corp. v. Hudson Riv.-Black Riv. Regulating Dist.*, 673 F.3d 84, 107 (2d Cir. 2012). The same is true of Khazin's scattershot references to various alleged acts of retaliation, mentioned solely in his statement of facts, without any discussion or argument. *Id.*; *Gross v. Rell*, 585 F. 3d 72, 95 (2d Cir. 2009).[7]

As to Khazin's retaliation claim under Title VII, summary judgment was properly granted to defendants because Khazin failed to make out a prima facie case. His contention that he faced retaliation for refusing to discriminate against Officer Harge while assigned to Highway 3 cannot support a prima facie case because he never communicated at the time, in any manner, that his admitted failure to follow his superiors' instructions regarding his supervision of Harge was

---

[7] In his statement of facts, Khazin mentions being "denied trainings following his complaint" (App. Br. 11), that he "was no longer permitted to attend meetings with the CO" (*id.* at 13), and that he received a "biased" annual evaluation score (*id.*). He does not address any of these issues in his argument and has therefore waived them. *Niagara Mohawk*, 673 F.3d at 107; *Gross*, 585 F.3d at 95. In any event, the district court rightly concluded that, under *Burlington Northern*, 548 U.S. 53, none of these alleged actions could be considered materially adverse to support a retaliation claim (*see* SA16-18).

driven by a belief that the instructions were discriminatory. And the IAB investigation into Khazin's unauthorized off-duty employment and his related transfer to the 9th Precinct occurred *before* Khazin first engaged in protected activity by filing a complaint with NYPD's EEO office on June 29, 2016.

It is undisputed that this investigation originated in December 2015, when a non-defendant sergeant made a complaint regarding Khazin's off-duty employment, and Khazin was transferred in early June 2016, about three weeks before Khazin filed the EEO complaint on Harge's behalf. Khazin therefore cannot establish a causal connection between his subsequent protected activity and the discipline that arose from the earlier investigation. Nor can he connect any other allegedly retaliatory action he faced to his filing of EEO complaints. As to some of the actions alleged, he cannot even show they were materially adverse.

In any event, even if Khazin could meet his initial burden, he failed to demonstrate that the City's explanation for the alleged retaliatory conduct was pretextual. He points to the temporal proximity of certain of the alleged retaliatory acts to his EEO complaints, but temporal proximity is insufficient to defeat summary judgment at the pretext stage. *Carr v. N.Y.C. Transit Auth.*, 76 F.4th 172, 182 (2d Cir. 2023). And the affidavits he submitted in opposition to summary judgment,

conclusorily asserting that Khazin faced retaliation, or that others did, do not satisfy his burden to bring forward some evidence of pretext. *See Hicks*, 593 F.3d at 166-67.

Finally, even assuming Khazin had not abandoned his state and city claims by briefing them in an entirely conclusory fashion, those claims fail. His NYSHRL retaliation claim fails for the same reasons as his Title VII claim because they are governed by the same standard. And, even under the NYCHRL's more liberal standard for retaliation claims, Khazin failed to show any causal connection to make out a prima facie case and failed to demonstrate pretext.

## ARGUMENT

### THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT TO DEFENDANTS

Federal, state, and city law prohibit employers from retaliating against employees who oppose any discriminatory practice made unlawful by those statutes. *See* 42 U.S.C. § 2000e-3(a) (Title VII); 42 U.S.C. § 1983; N.Y. Exec. Law § 296(7) (NYSHRL); N.Y.C. Admin. Code § 8-107(7) (NYCHRL). Retaliation claims under Title VII, Section 1983, and the NYSHRL are analyzed using the three-step *McDonnell Douglas* burden-shifting evidentiary framework. *See Carr v. N.Y.C. Transit*

22

*Auth.*, 76 F.4th 172, 178 (2d Cir. 2023) (Title VII); *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 91 (2d Cir. 2015) (Section 1983);[8] *Banks v. GM, LLC*, 81 F.4th 242, 275 (2d Cir. 2023) (NYSHRL).

Under that framework, a plaintiff must first make out a prima facie case of retaliation. *Carr*, 76 F.4th at 178. To do so, the plaintiff must establish that (1) they engaged in protected activity, (2) the defendant was aware of that activity, (3) they were subjected to a retaliatory action or actions that were materially adverse, and (4) there was a causal connection between the protected activity and the materially adverse action or actions. *Id.* at 180. A materially adverse action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (quoting *Burlington Northern*, 548 U.S. at 68). And, to establish the requisite causal connection, the plaintiff must show that the retaliation was a but-for cause of the employer's adverse action. *Banks*, 81 F.4th at 275.

If the plaintiff makes out a prima facie case, the burden shifts to defendant to provide a legitimate, non-retaliatory reason for the allegedly retaliatory action. *Carr*, 76 F.4th at 178. Once the employer

---

[8] As noted, Khazin has abandoned his Section 1983 claim by failing to address it in his opening brief. In any event, this claim fails for the same reasons as his Title VII claim.

does so, the presumption of retaliation "drops from the picture," and the plaintiff must come forward with evidence that the defendant's proffered, non-retaliatory reason is a mere pretext for retaliation. *Kwan v. Andalex Group, LLC*, 737 F.3d 834, 845 (2d Cir. 2013).

Retaliation claims under the NYCHRL are also analyzed using the *McDonnell Douglas* burden-shifting framework, although they are subject to a "broader" liberal construction analysis. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). The plaintiff must show that they "took an action opposing [their] employer's discrimination ... and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Id.* at 112.

Applying these standards, the district court rightly granted summary judgment to defendants on Khazin's retaliation claims. As the court correctly held, Khazin failed to make out a prima facie case of retaliation. Further, summary judgment is warranted because he offered no evidence sufficient to rebut defendants' legitimate explanation for the challenged actions.

### A. Summary judgment was properly granted on Khazin's Title VII retaliation and constructive discharge claims.

To establish a prima facie case of retaliation, Khazin was first required to show that he engaged in protected activity of which his employer was aware. *Carr*, 76 F.4th at 178. He asserts that he first engaged in protected activity in 2015 when he refused to follow the allegedly discriminatory instructions of his direct supervisor, Lieutenant Levine, to closely supervise Officer Harge and not approve his time off, but rather require Harge to obtain approval from one of the lieutenants (*see* App. Br. 20). He further asserts he engaged in protected activity when he filed complaints with the NYPD EEO office in June 2016, November 2016, and February 2017 (*id.*).

### 1. Khazin failed to make out a prima facie case of retaliation for actions prior to his June 2016 complaint.

Khazin's claim that he faced retaliation prior to his EEO complaints fails at the outset because he cannot establish that he engaged in protected activity of which his employer was aware. Even accepting Khazin's contention that he disregarded his superior's instructions because he believed them to be discriminatory against Harge, it is undisputed—and indeed Khazin admits—that he never

communicated this belief to his employer in any way before his June 29, 2016 complaint (A314-15, 402, 768, 771-72; EDNY ECF No. 89-4 at 96-97, 119-21). This is fatal to any earlier claim of retaliation. As this Court has explained, "implicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII." *Galdieri-Ambrosini v. Natl. Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998); *see Natofsky*, 921 F.3d at 354 (finding plaintiff's statement too general to indicate to employer that he was protesting his demotion as discriminatory); *Rojas v. R.C. Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011) (where any complaints plaintiff made were generalized, defendant "could not reasonably have understood that she was complaining of conduct prohibited by Title VII"). Here, Khazin did not indicate in any manner at the time that the reason he was failing to follow instructions regarding the supervision of Harge was because he believed them to be discriminatory.

Khazin nonetheless attempts to impute to defendants knowledge of his "protected activity" in 2015 based on their supposed knowledge of Harge's discrimination complaint (*see* App. Br. 22). Yet, while Khazin now asserts that Levine's statement to Khazin that Harge was a "liar"

must have been because of Harge's complaint (*see id.*), Khazin's own testimony was that Levine called Harge a "liar" in reference to Harge's request for time off (EDNY ECF No. 89-4 at 105). Additionally, there is no evidence in the record that Levine had any knowledge of Harge's complaint (*see* SA14-15). And, even if Levine or other defendants did know of it, there was no way for them to know that Khazin was aware of it or that his failure to follow their instructions was a tacit protest of it (*see* SA15-16).

Khazin's situation therefore differs significantly from that in *Villavicencio v. Gure-Perez*, 56 F. Supp. 3d 178 (E.D.N.Y. 2014) (*see* App. Br. 31-32), where an assistant principal refused to follow her principal's directions to provide older African American teachers with unwarranted unsatisfactory ratings. *See Villavicencio*, 56 F. Supp. 3d at 182, 189. There, the court found that in the context of the principal's prior racist statements and behavior, the assistant principal's actions were sufficiently specific to make clear to the principal that she was complaining about race-based discrimination. *Id.* at 189-90. Here, by contrast, there is no evidence in the record of any past racist statements or behavior by Levine or other defendants (*see* SA16). While Khazin points to Levine's negative comments about Harge being "lazy" and a "liar" (*see* App. Br. 20, 22), there is nothing suggesting that these

27

comments were tied to Harge's race or the fact that he had alleged that he was being discriminated against. In short, there was no basis for supervisors to understand at the time that Khazin's refusal to follow instructions was supposedly an informal protest against discrimination (*see* SA16).

This Court's inquiry need go no further, but it bears noting that Khazin also cannot establish that he faced any materially adverse retaliatory action connected to his supposed protected activity. Khazin now claims that his tour was changed at the end of November 2015 following his failure to follow Levine's instructions regarding giving Harge time off (*see* App. Br. 23, 27).[9] However, it is undisputed that this tour change followed an incident where Khazin failed to account for the whereabouts of a different officer and inaccurately completed a form for lost time on his behalf (A414, 772). And, given that Khazin was returned to his prior tour about a month later at his request (A772; EDNY ECF No. 89-4 at 108), his tour change is no more than a "trivial harm" that cannot be considered materially adverse for purposes of a retaliation claim. *Carr*, 76 F.4th at 179.

---

[9] Khazin gave conflicting testimony as to whether he was reprimanded for giving Harge time off in November 2015, before his tour change, or in March or April 2016, after he had already been returned to his prior tour (*see* A33, 35, 677; EDNY ECF No. 89-4 at 105-08, 110:25-111).

As to Khazin's claim that his off-duty employment applications were ignored (*see* App. Br. 27), the only evidence of Khazin submitting applications that were not approved was in January 2016, when he was already being investigated for unauthorized off-duty employment, and the applications were not acted upon because that investigation was pending (*see* A780-81). Khazin makes no effort to show a causal connection between this supposed retaliation and his claimed protected activity (*see generally* App. Br. 28-33).

Khazin's contention that he was transferred to the 9th Precinct in early June 2016 in retaliation for refusing to discriminate against Harge (*see* App. Br. 27) also does not hold up. First, it is belied by his own admission that he agreed to the transfer as part of the resolution of the discipline he faced for engaging in unauthorized off-duty employment (A248-49; EDNY ECF No. 89-4 at 113). It is undisputed that IAB's investigation into Khazin's off-duty employment began independently, after another sergeant made a complaint to IAB (A407, 410, 777), and Khazin accepted the "B" CD he received based upon the investigation's findings (A414-15, 778-80). Thus, even if Khazin could show he engaged in protected activity of which his employer was aware (and he cannot), he still could not show any causal connection between his

claimed protected activity and his transfer from Highway 3 to the 9th Precinct.

Nor is Khazin helped by the affidavit of Sergeant Fritz Glemaud, summarily stating that Khazin was being targeted after he supposedly refused to target Officer Harge (*see* App. Br. 20, 32; A872). Glemaud's conclusory statement, and his general assertions regarding "this type of retribution" in the NYPD (A872), do not provide evidentiary support for Khazin's claim. *See Hicks v. Baines*, 593 F.3d 159, 166-68 (2d Cir. 2010) (finding conclusory allegations insufficient to allow claims to survive summary judgment).

### 2. Khazin failed to make out a prima facie case of retaliation for actions after his EEO complaints.

While Khazin's complaints with NYPD's EEO office in late June 2016, November 2016, and February 2017 constitute protected activity, he nonetheless fails to make out a prima facie case of retaliation for those complaints because he has not adduced evidence to show that defendants' allegedly retaliatory actions were materially adverse and causally connected to them. Khazin instead recites a laundry list of actions he claims were materially adverse—unjust discipline, placement on performance monitoring, tour changes, denial of overtime, and the

30

denial of a Highway Sergeant position—without citations to record evidence or meaningful discussion (*see* App. Br. 27-28, 29-30).[10]

Initially, it is not clear which disciplinary action or actions Khazin contends constitute "unjust discipline" on this appeal (*id.* at 27). He asserts that within two months of his first formal complaint he was falsely accused and ultimately punished for failing to supervise Harge (*id.* at 30). Khazin's first formal complaint was filed on June 29, 2016 (after his transfer to the 9th Precinct), so it appears he may be referring to the "B" CD issued on August 22, 2016 (*see* A414-15, 778-80). However, this CD did not concern Harge, but rather addressed Khazin's unauthorized off-duty employment and his failure to supervise four officers during his Veterans Day parade detail on November 11, 2015, among other misconduct (*see id.*). And, as Khazin agreed to and accepted this CD, it can hardly be viewed as unjust discipline (*see* A248-49, 415; EDNY ECF No. 89-4 at 113).

On October 12, 2016, nearly four months after his first complaint, a separate "B" CD was issued against Khazin because he and Harge had gone off-post without reporting their location, and they failed to

---

[10] Khazin's claims as to his tour change while in Highway 3, his off-duty applications being ignored, and his transfer to the 9th Precinct are addressed in the previous section of this brief.

respond to a radio call relaying a dangerous condition—a person walking on the highway (*see* A418, 782). But even if this is what Khazin contends was unjust discipline, both CDs arose out of the investigation into Khazin's off-duty employment while Khazin was in Highway 3, which well preceded Khazin's filing of any complaint. Because these "adverse job actions began well before [Khazin] had ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001); *see Cayemittes v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 974 F. Supp. 2d 240, 262 (S.D.N.Y. 2013) ("It is well-settled that an adverse employment action cannot serve as the basis for a retaliation claim if the action was set in motion before a plaintiff engaged in protected activity"), *aff'd*, 641 F. App'x 60, 63 (2d Cir. 2016).

Likewise, Khazin failed to establish any causal connection between his protected activity and the discipline he later faced for falsely accusing his supervising lieutenant of a crime and for engaging in off-duty employment while on sick report, among other misconduct. Khazin was suspended and issued charges and specifications in October 2018 (A473-79), more than a year and a half after his last claimed protected activity in February 2017 (App. Br. 20). The temporal distance between Khazin's protected activity and the alleged retaliatory conduct is far too

remote to support an inference of causation. *See Campbell v. N.Y.C. Tr. Auth.*, 93 F. Supp. 3d 148, 177-78 (E.D.N.Y. 2015), *aff'd,* 662 F. App'x 57 (2d Cir. 2016).

As to Khazin's placement on performance monitoring as of November 7, 2016, although this occurred shortly after Khazin's second EEO complaint on November 1, 2016, the record is clear that this placement was made by Inspector John Cosgrove, Commanding Officer of the Performance Analysis Section, upon the review of Khazin's disciplinary history and other records (A425, 522, 785). Cosgrove is not a defendant here, and Khazin has pointed to no evidence suggesting that Cosgrove had any awareness of his EEO complaints, or that his placing Khazin on performance monitoring was connected in any way to Khazin's protected activity (*see* SA21).

Khazin also has failed to raise a genuine factual dispute on his claim that he was switched to the day tour in the 9th Precinct in retaliation for his protected activity. Even assuming he could show that this schedule change could be considered a materially adverse action, the evidence shows that Captain Greany switched Khazin to the day tour so that he could be more closely supervised following his placement on Level I Monitoring (*see* A425, 428, 522, 785-86). Greany was also

33

unaware of Khazin's EEO complaints (A521), and Khazin does not point to any evidence that raises a triable issue of fact on this issue.

The same is true of Khazin's claim that he was denied overtime. Beyond his own conclusory assertions, Khazin fails to proffer evidence that he was denied overtime at all, much less in retaliation for any protected activity. Khazin claims that his overtime decreased in September and October 2016 and that he earned less income than other sergeants in the 9th Precinct (A837). But the evidence shows that efforts were being made to reduce overtime for all officers, and that the amount of overtime Khazin received was well in line with other sergeants (A431, 521-22, 787-88; EDNY ECF No. 89-53 at 2). Further, the purported evidence Khazin submitted in his attempt to show that he earned less income from overtime than other sergeants was "woefully deficient" (SA20 n.4). The document Khazin submitted, reflecting third-party reporting of public employee annual pay, was not admissible evidence (*see* A839-43), and in any event, did not "contain any information regarding the comparators' employment statuses or show how many overtime hours the comparators worked or on what dates they worked those hours" (SA20 n.4). Khazin therefore failed to raise a genuine factual dispute on this issue (*id.*).

As to Khazin's claim that he was twice denied a Highway Sergeant position (*see* App. Br. 28), the record is similarly devoid of any evidence tying these denials to Khazin's protected activity. Khazin also failed to present evidence showing that he "was qualified or more qualified than others for any of the positions he sought" or that the denials could be considered materially adverse actions (SA17-18).

### 3. Khazin failed to show that defendants' legitimate reasons for the challenged actions were pretextual.

While the district court did not reach the question of pretext because it correctly found that Khazin had failed to make out a prima facie case, Khazin's claim also fails at the third stage of burden-shifting framework because he failed to raise any triable issue of fact as to whether defendants' legitimate reasons for the alleged adverse actions were pretextual.[11] Khazin has not presented any evidence that retaliatory motive played any role in defendants' actions, much less that it was a but-for cause of them. *See Carr*, 76 F.4th at 182.

As explained above, defendants took legitimate disciplinary actions against Khazin based on his violations of NYPD's rules, in

---

[11] This Court "may affirm summary judgment on any ground supported by the record, even if it is not one on which the district court relied." *McElwee v. County of Orange*, 700 F.3d 635, 640 (2d Cir. 2012).

particular regarding off-duty employment, and his serious misconduct in making false criminal allegations against his supervising lieutenant in the 9th Precinct. Defendants explained that Khazin was placed on Level I Monitoring by Inspector Cosgrove, Commanding Officer of the Performance Analysis Section, based on a review of Khazin's disciplinary and other history, and that Captain Greany then switched Khazin to day tours to allow for the recommended level of monitoring and supervision (A425, 428, 522). To the extent Khazin showed any reduction in his overtime, Greany explained that in 2016, all commands had been advised to monitor overtime usage, and that all officers therefore received reduced overtime, including Khazin (A522; *see* A431; EDNY ECF No. 89-53 at 1-2). Finally, as to Khazin's contention that his off-duty applications were ignored, defendants explained that these applications were not acted upon because there was already a pending investigation into Khazin's unauthorized off-duty employment (A780-81). This was prior to Khazin's first protected activity in any event, and Khazin did not present any evidence that he submitted applications for off-duty employment once he was transferred to the 9th Precinct other than his September 2017 application, which was promptly approved (A522-23, 791-92).

In his attempt to show pretext, Khazin offers blanket denials of the disciplinary charges against him (*see* App. Br. 33, 35), even though he previously admitted to much of the misconduct underlying those charges (*see* A180-87, 414-15, 462, 474, 773, 778-80, 793). In any event, mere denials are insufficient to show pretext and defeat summary judgment. *See Hicks*, 593 F.3d at 166. Rather, in response to defendants' proffered non-retaliatory reasons for their actions, Khazin was required to come forward with evidence of pretext. But the only evidence Khazin can muster—the affidavits of retired Lieutenant Angelique Olaechea and Officer Tom Morton (*see* App. Br. 33-34)—lands him far short of meeting his burden.

Olaechea's affidavit (A859-67), which largely concerns alleged retaliation against a different member of the NYPD and her own complaints to NYPD's EEO office, offers only a few paragraphs concerning Khazin, and her conclusory assertion that "it was clear that Sergeant Khazin had already been discussed by upper management and his fate was sealed" (A866).

Morton's affidavit (A87-82) likewise offers no more than unsubstantiated speculation insufficient to raise a factual issue. Morton asserts that Khazin was, "on some occasions," his patrol supervisor in the 9th Precinct before Khazin was transferred to the day tour, and that

37

Lieutenant Diaz was "constantly" singling out Khazin by calling him back to the command (A880). He offers no specifics as to how often this occurred, and it amounts to no more than a trivial harm in any event. Indeed, Khazin does not purport to base his retaliation claim on any allegation about being called back to the command. Morton also does not explain how he has any personal knowledge of a nameless Integrity Control Officer or Lieutenant from Highway purportedly coming to speak with Captain Greany in the 9th Precinct, and he offers only conclusory assertions in support of his claim that Khazin was being treated differently than other supervisors (A880).

In short, Khazin has failed come forward with evidence that defendants' reasons for their actions were pretextual. As a result, even if he had established a prima facie case of retaliation, his claims would still fail.

### 4. Khazin's constructive discharge claim also fails.

Finally, Khazin has failed to raise a triable issue of fact as to his claim that he was constructively discharged when he resigned in March 2019. Constructive discharge occurs "when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit voluntarily."

38

*Serricchio v. Wachovia Sec. LLC*, 658 F.3d 169, 185 (2d Cir. 2011). To succeed on such a claim, the employee must show (1) evidence of the employer's intent to create an intolerable environment that forces the employee to resign, and (2) that a reasonable person would have found the work conditions so intolerable that they would have felt compelled to resign. *Shultz v. Congregation Shearith Israel*, 867 F.3d 298, 308 (2d Cir. 2017).

Khazin asserts that he was forced to resign because he was under significant stress from the allegedly retaliatory acts of defendants and was facing inevitable termination (App. Br. 36-37). But he offers only conclusory allegations of a long commute, lack of overtime, and tour changes in support (*see id.*), and he fails to point to any record evidence that he was about to be terminated. Nor does Khazin present evidence, beyond his own unsupported speculation, of his employer's intent to create an environment that would compel him to resign (*see* App. Br. 16). And, as Khazin failed even to make out a prima facie case of retaliation, he certainly cannot show retaliation that created work conditions so intolerable that he was forced to do so.

When Khazin resigned in March 2019, over two years had passed since his last protected activity in February 2017. While he complains of his long commute after his transfer, this reassignment stemmed from

Khazin being placed on modified duty following his suspension for serious misconduct in October 2018 (*see* A473-79). As the district court observed, the last evidence of any adverse action taken against Khazin was an "A" CD with a recommended penalty of one vacation day, issued in November 2018 (SA22; *see* A797-78). This CD was unconnected, temporally or otherwise, to any protected activity, and was issued four months prior to Khazin's resignation.[12] On these undisputed facts, no reasonable juror could find Khazin was constructively discharged when he resigned.

### B. Summary judgment was properly granted on Khazin's State and City Human Rights Law claims.

As an initial matter, Khazin's one-paragraph argument regarding his state and city claims is insufficient to preserve them for this Court's review (*see* App. Br. 37-38). "It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Niagara Mohawk Power Corp. v. Hudson Riv.-Black Riv. Regulating Dist.*, 673 F.3d 84, 107 (2d Cir. 2012); *see Hicks*, 593 F.3d at 166 n.5 (arguments forfeited

---

[12] Although charges and specifications were later issued on March 6, 2019, this was a consequence of Khazin's decision not to accept the findings and one-day penalty of the "A" CD (*see* A769-70).

on appeal where they consisted of "purely conclusory allegations" without "further explanation, analysis, or developed argument"); *Coal. on W. Valley Nuclear Wastes v. Chu*, 592 F.3d 306, 314 (2d Cir. 2009) ("We find that Appellant's two-sentence legal analysis in their opening brief is insufficient to preserve this issue for appellate review.").

Khazin first avers generally to "more lenient NYCHRL and NYSHRL standards" (App. Br. 37), but fails to explain what these standards might be. Initially, he sets forth the standard applicable to a discrimination claim under the NYCHRL, which has no bearing on the retaliation claims alleged here (*see id.* (quoting *Mihalik*, 715 F.3d at 110)). He then points to *Bowen-Hooks v. City of N.Y.*, 13 F. Supp. 3d 179, 221 (E.D.N.Y. 2014), and *Matter of Clifton Park Apts., LLC v. N.Y. State Div. of Human Rights*, 41 N.Y.3d 326, 331-32 (2024), both of which simply apply the Title VII standard from *Burlington Northern*, 548 U.S. 53, to retaliation claims under the NYSHRL. Khazin thus indirectly acknowledges that the standard for his retaliation claim is no different under the NYSHRL than it is under Title VII.[13]

---

[13] Although New York amended the NYSHRL in August 2019, Khazin's claims accrued prior to this. His NYSHRL claim is therefore subject to the same standard as his Title VII claim regardless of any possible change to the NYSHRL standard based on the 2019 amendments. *See Phillips v. Fashion Inst. of Tech.*, No. 23-375, 2024 U.S. App. LEXIS 5615, at *1 n.1 (2d Cir. Mar. 8, 2024) (summary order); *Kwong v. City of N.Y.*, 204 A.D.3d 442, 444 n.1 (1st Dep't 2022).

Khazin has waived any issue as to his NYSHRL and NYCHRL claims because the entirety of his argument consists of three sentences that do no more than list the alleged acts of retaliation with the contention that he "has sufficiently placed the [d]efendants on notice of [his] retaliation claims" (App. Br. 38). It hardly bears saying that more is required to defeat summary judgment: "a non-moving party may not rest on the pleadings but must further set forth specific facts ... showing a genuine issue exists for trial." *Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996).

Finally, even if preserved, Khazin's NYSHRL retaliation claim fails for the same reasons as his Title VII claim because, as discussed above, they are governed by the same standard. *See* Section A, *supra*. Moreover, even under the NYCHRL's more liberal standard, *Mihalik*, 715 F.3d at 109, summary judgment was properly granted to defendants for several reasons.

First, under the NYCHRL standard, Khazin was still required to show that his employer was aware of his allegedly protected activity, *Sanderson-Burgess v. City of N.Y.*, 173 A.D.3d 1233, 1235-36 (2d Dep't 2019); *Bendeck v. NYU Hosps. Ctr.*, 77 A.D.3d 552, 553 (1st Dep't 2010), which he failed to do as to the period prior to his June 29, 2016 complaint. *See* Section A(1), *supra*. Second, Khazin failed to make out a

42

prima facie case under the NYCHRL because he failed show any causal connection or nexus between his protected activity and the defendants' allegedly retaliatory actions. *Sanderson-Burgess*, 173 A.D.3d. at 1236; *Brightman v. Prison Health Serv., Inc.*, 108 A.D.3d 739, 742 (2d Dep't 2013). *See* Section A(2), *supra*. Third, once defendants proffered legitimate non-retaliatory reasons for their actions, Khazin was required to come forward with evidence of pretext or retaliatory motive. *Reichman v. City of N.Y.*, 179 A.D.3d 1115, 1120 (2d Dep't 2020). Here, Khazin offered only conclusory and unsupported assertions, which were insufficient to establish that defendants' reasons were pretextual. *Bendeck*, 77 A.D.3d at 553-54. *See* Section A(3), *supra*.

## CONCLUSION

This Court should affirm the district court's judgment.

Dated:  New York, New York
        November 20, 2024

Respectfully submitted,

MURIEL GOODE-TRUFANT
*Acting Corporation Counsel*
*of the City of New York*
Attorney for Appellees

By: _____

JENNIFER LERNER
Assistant Corporation Counsel

100 Church Street
New York, New York 10007
212-356-32551
jlerner@law.nyc.gov

RICHARD DEARING
REBECCA L. VISGAITIS
JENNIFER LERNER
   *of Counsel*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief was prepared using Microsoft Word, and according to that software, it contains 9,133 words, not including the table of contents, table of authorities, this certificate, and the cover.

_____
JENNIFER LERNER