<u>To be argued by John Scola, Esq</u>
<u>15 Minutes</u>

# <u>24-1236</u>

IN THE

*United States Court of Appeals*

FOR THE SECOND CIRCUIT

_____

VALENTIN KHAZIN

*Plaintiff Appellant*

*v.*

C
THE CITY OF NEW YORK; et al

*Defendants Appellees*

_____

On Appeal from the United States District Court
for the Eastern District of New York

_____

## **PLAINTIFF APPELLANT'S REPLY BRIEF**

_____

Law Office of John A. Scola, PLLC

*Attorneys for Petitioner- Appellant*

Valentin Khazin
90 Broad Street, 10th Floor
New York, New York 10004
(917) 423-1445
jscola@johnscolalaw.com

i

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT………………………………………………….. 1

ARGUMENT……………………………………………………………………….. 1

POINT 1- THE DEFENDANTS TIMELINE SHOWS RETALIATION………………. 1

POINT II- THE DISTRICT COURT FAILED TO PROPERLY

    CONSIDER PLAINTIFF'S WITNESS AFFIDAVITS………………………….. 4

     Fritz Glemaud                                                       5

     Angelique Oleachea                                      6

     Tom Morton                                                8

     Peter Miller                                                 9

POINT III- THE COURT FAILED TO CONDUCT THE PROPER

    ANALYSIS OF PLAINTIFFS CITY HUMAN RIGHTS

    CLAIMS WHICH MUST BE REMANDED FOR PROPER ANALYSIS      9

CONCLUSION……………………………………………………………………….. 15

Printing Certificate                                                            16

# **TABLE OF AUTHORITIES**

*Benedith v. Malverne Union Free Sch. Dist.,*
    No. 11–CV–5964(ADS) (GRB), 38 F.Supp.3d 286, 322
    2014 WL 4056554, at *29 (E.D.N.Y. Aug. 15, 2014)     6

*Bennett v. Health Mgt. Sys., Inc., 92 A.D.3d 29, 41, 936 N.Y.S.2d 112 [2011]*     10, 11

*Cruz v. Coach Stores, Inc.,*
    202 F.3d 560, 566 (2d Cir.2000).     6

*Dana Harge v. City of New York,*
    2022 WL 17481819 (2nd Circ. 2022).     11

*Forrest v. Jewish Guild for the Blind,*
    3 NY3d 295, 313 [2004].)     10

*Matter of Clifton Park Apts. LLC v. New York State Div. of Human Rights,*
    2024 NY Slip Op 000793 (2024).     9

*McDonnel-Douglas Corp. v. Green,*
    411 U.S. 792, 802 (1973).     10, 11

*Melman v. Montefiore Medical Center,*
    98 A.D. 3d 107, (1st Dept. 2012).     11

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,*
    715 F.3d 102, 114 (2d Cir. 2013)     12

*Noho Star Inc. v. New York State Div. of Human Rights,*
    72 AD3d 448, 449 [1st Dept 2010].)     10

*Stern v. Trs. of Columbia Univ.,*
    131 F.3d 305, 312–13 (2d Cir.1997)     15

Stratton v. Dep't for the Aging for New York,
    132 F.3d 869, 880-81 (2d Cir. 1997)     14

*Ya-Chen Chen v. City Univ. of N.Y.,*
    805 F.3d 59, 75 (2d Cir. 2015)     11

| **Statute** | **Page** |
|---|---|
| New York City Administrative Code §§8-107 et seq. | 1, 8-11 |
| New York State Human Rights Law, N.Y. Exec. Law §§ 290-97 | 8 |

**PRELIMINARY STATEMENT**

The District Court erred in granting summary judgment to the Defendants in this case. Plaintiff Valentin Khazin, a former New York City Police Department ("NYPD") Sergeant, was rail-roaded out of the NYPD after he refused to target a black subordinate police officer based on his race. When Plaintiff refused to discriminate his career was systematically ended. The District Court chose to overlook numerous affidavits of co-workers of Plaintiff and his rebuttal of the discipline levied his way in order to credit the Defendants explanations and award them judgment herein. The Defendants failed to follow NYPD procedure in their stop at nothing efforts to retaliate against Plaintiff. The District Court failed altogether to perform the proper analysis for Plaintiff New York City Human Rights Law claims which warrants automatic remand to state court for proper adjudication. Plaintiff testifies that he engaged in protected activity for not discriminating against Harge which is supported by the witness affidavits herein. As a result, the Court's decision was in error and should be reversed in its entirety and the case remanded back to the Eastern District of New York for trial.

**ARGUMENT**

**POINT I**

**THE DEFENDANTS TIMELINE SHOWS RETALIATION**

The Courts reliance on the date of initiation of the investigation into Plaintiff is irrelevant to the calculation herein as Plaintiff was retaliated against

1

while that investigation was pending in direct conflict to the testimony of Defendant Ge who testified that officers being investigated are afforded the same benefits as officers who are not. Specifically, Defendant Ge testified that while an officer is being investigated they are afforded all the benefits of employment until that investigation is adjudicated. Here, while Plaintiff was being investigated he submitted applications for off duty employment on January 30, 2016. See A699. Fellow Sergeant, and comparator, Robert Serra submitted his off-duty employment paperwork, one day later, on February 1, 2016. Id at 241 (A0814). Sergeant Serra received an approval on the same day he submitted the application. Id at 242. (A0814) Since Plaintiff never received his applications back or was told otherwise, he believed that his off-duty applications had been approved. Id at 252.(A00816). Defendant Lipke testified that "during a pending investigation that an Officer would be afforded the same benefits as every other officer. Id at 253. (A0816) Nevertheless, Defendants claim that Plaintiff's application were held in abeyance without informing him due to pending investigations against him. Id at 247. (A0815). This shows that Plaintiff was being treated differently than Serra who did not engage in protected activity, as of January 30, 2016. See 814 at 241-243. Plaintiff further shows evidence that this denial of Plaintiff conflicted with NYPD procedure. See 815 at 245-250.

2

Plaintiff submitted admissible evidence that it was well known that Harge filed a discrimination complaint and that he was the only officer that Plaintiff could not approve days off for following Harge's protected complaint. See A801-806 at 173- 200. Immediately following the complaint of discrimination by Harge, Plaintiff is informed of the complaint and is directed to only target Harge. Plaintiff deems this to be retaliation and refuses the Order as he believed Levine is openly discriminating and retaliating against Harge. Id. Defendant Ge further testifies that the only employees closely monitored file complaints of discrimination. Id at 200. This incident occurred two months prior to Plaintiff resubmitting his off duty application and while an investigation was pending.

The Defendants admit that Plaintiff's applications were never formally denied. Id at 251. Defendant Ge, however, testified that Plaintiffs off duty employment applications were denied due to his failure to supervise. See A815 at 250. This statement is not factually accurate as the Defendant concede that Plaintiff's applications for off duty employment, contrary to NYPD Procedure, was never denied. Id at 250. This is evidence of pretext. The Court used the original, unsubstantiated complaint date, to justify dismissal of this action. However, the investigation did not conclude until August 2016. See 401. Plaintiffs off duty applications were improperly ignored in January 2016. This is evidence of retaliation and/or pretext and warrants denial of summary

judgment. The conflicting testimony is sufficient to raise a question of fact herein.

Further, Plaintiff refutes each and every discipline that was levied against him. The Defendants are insistent that because Plaintiff accepted a command discipline that the years of retaliation are warranted. Plaintiff testified that he accepted the Command discipline based on a promise from Defendant Ge that he subsequently did not honor. See A822 at 283. The Defendants admit this but now claim that Plaintiff agreed with the disciplinary findings of the Defendants. That is not what the evidence shows. Plaintiff elicited the testimony of several officers who confirm that a 10-10 job which is what Plaintiff was disciplined for was not a serious offense like the Defendants claim and did not warrant discipline. See A824-827 302-320. This is the bogus discipline that led to Plaintiff being removed from Highway. Every which way the Defendants excuses are rebutted by the evidence here. The Defendants motion for summary judgment was granted in error.

## POINT II
## THE DISTRICT COURT FAILED TO PROPERLY CONSIDER PLAINTIFF'S WITNESS AFFIDAVITS

Plaintiff's numerous witness statements show pretext in Defendants argument barring summary judgment. Each of these witnesses advance Plaintiff's case in a manner that was not considered by the District Court.

4

These affidavits, at the very least, show a mixed motives of the actions of the Defendants.

### **Affidavit of Fritz Glemaud A871**

Sergeant Glemaud worked with Plaintiff in Highway prior and after the suicide of then Commanding Officer Michael Ameri. Id at 9. Glemaud will testify that Plaintiff was a stellar employee. A872 at 17. Glemaud will testify that Plaintiff was a targeted for his refusal target Black officer Harge. Id at 18. Glemaud further explains that when supervisors want to target an employee then they elicit the direct supervisor to go after the target. Id at 21. Glemaud further states that when a supervisor fails to do what he is told he will be the one who is retaliated against which is what happened to Khazin. Id at 22-26. Glemaud will testify that he witnesses Plaintiff being denied benefits like not approving off duty employment or denying days off. Id at 28. Plaintiff was further stripped of his overtime. Id at 29-40. Glemaud will testify that a "Failure to supervise" is a generic catch all discipline, and that Plaintiff always worked hard and acted professionally. Id at 41-48.

The Glemaud affidavit conflicts with the Defendants position that they were unaware that Plaintiff had stood up against Harge's discrimination and that he was punished for it. Glemaud will further testify that he witnessed Plaintiff being targeted for not retaliating against Harge. Here, Plaintiff engaged in protected activity when he refused the orders of Lt. Levine to unlawfully target Police Officer Harge in November 2015 when he approved

5

the lost time and gave a day off to Harge. It was known throughout the Command that Harge had filed the complaint of discrimination. This is corroborated by the affidavit of Fritz Glemaud which states that Plaintiff was being targeted after he refused to discriminate against Harge. Immediately following his decision to not follow the unlawful orders of Lt Levine to discriminate and retaliate against Harge, Plaintiff had his tour changed creating a childcare hardship.

The question as to whether or not Plaintiff was being targeted for objecting and then refusing to discriminate and retaliate against Harge is protected activity. This question in and of itself bars summary judgment here. "The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 566 (2d Cir.2000). "While a protected activity generally involves the filing of a formal complaint of discrimination with an administrative agency, the [Court of Appeals for the] Second Circuit has recognized that protected activity includes informal protests of discriminatory employment practices, including making complaints to management." *Benedith v. Malverne Union Free Sch. Dist.,* No. 11–CV–5964(ADS) (GRB), 38 F.Supp.3d 286, 322, 2014 WL 4056554, at *29 (E.D.N.Y. Aug. 15, 2014).

### Affidavit of Angelique Olaechea A858

Lieutenant Olaechea was a supervisor of Plaintiff after he was transferred from Highway Unit to the 9th Precinct. Angelique Olaechea had her own

discrimination and retaliation case against the Defendant CITY and several of the individuals from the 9th Precinct. The Olaechea matter was tried before the Honorable Ronnie Abrams wherein Lieutenant Olaechea was awarded $872,000 in damages on August 8, 2021.

Lieutenant Olaechea after Khazin was transferred to the 9th Precinct witnessed. Olaechea will testify that she personally witnessed several NYPD employees be retaliated against after they complained of discrimination. The affidavit details the retaliation suffered by Police Office Javier Velazquez and Plaintiff at the hands of the Defendants herein. Id at Para 1- 58. The Affidavit further states that following Khazin's transfer he was treated identically to these other officers. Id at 59. Lieutenant Olaechea tried to save Plaintiff and asked to change him to her tour which was denied. Id at 60-62. Lieutenant Olaechea is told by the Administrative Sergeant that a call came down from Highway and we cannot give Khazin anything that he wants. Id at 62-63. Olaechea further states that she never witnessed an officer being denied off duty employment.

This affidavit explains that Plaintiff, within weeks of Plaintiff's formal OEEO on June 29, 2016, was targeted. A768 at 25. This in and of itself is enough to deny the Defendants summary judgment herein. Plaintiff, who had just filed a complaint of discrimination, was treated in the same manner as the other officers who were being retaliated against for also complaining of discrimination. If the

7

Court takes these facts as true which is required here then Plaintiff has set forth a prima facie case for retaliation.

### Affidavit of Tom Morton A877

Police Officer Tom Morton, who regularly worked as Plaintiff's driver, will testify that Plaintiff was treated differently than the other supervisors in the Command. Id at 1-9. Specifically Morton will testify that Plaintiff was targeted by the supervisors in the Command who were gunning to discipline Plaintiff. Id at 10-12. Morton personally witnessed Plaintiff being treated differently than other supervisors. Id. Morton further witnessed the emotional distress suffered by Plaintiff as a result of the retaliations and how the Defendants disrupted his childcare (Id at 16), overtime (Id at 17) and was constantly harassed at work (Id at 18-19). Officer Morton further explained that a 10-10 job, which is what Plaintiff was disciplined for in Highway, is a low level job which is not urgent. Id at 19-28.

This affidavit echoes the sentiments of Plaintiff. Following his discrimination complaint and his arrival in the 9th Precinct, Plaintiff was retaliated against which was noticed by Officer Morton. Morton will testify that Plaintiff had his overtime stripped, childcare cut, repeatedly harassed and that the alleged infraction, which Plaintiff testified was not a priority job and was manipulated to retaliate against Plaintiff, was not based on the procedures of the NYPD. This conflict in evidence creates a question of fact here.

**Affidavit of Peter Miller A864**

Sergeant Miller also submits an Affidavit detailing the discipline of Plaintiff for allegedly failing to discipline Dana Harge was unlawful retaliation. Specifically, Miller explains that a 10-10 job which Plaintiff was disciplined for is the lowest call resulting in only a "possible" event in progress. Miller explains the situation and that responding to this type of job is not a priority. Id at 1-15. This evidence further conflicts with the disciplinary explanations of the Defendants who are masking unlawful retaliation.

### POINT III
### THE COURT FAILED TO CONDUCT THE PROPER ANALYSIS OF PLAINTIFFS CITY HUMAN RIGHTS CLAIMS WHICH MUST BE REMANDED FOR PROPER ANALYSIS

Contrary to the Defendants claims, Plaintiff, in no way, abandoned his City and State Human Rights Law Claims. Plaintiff brings a full Point explaining that the District Court did not apply the proper analysis under New York City and State Human Rights Law. Plaintiff further highlights a recent Court of Appeals decision *Matter of Clifton Park Apts. LLC v. New York State Div. of Human Rights*, 2024 NY Slip Op 000793 (2024). In Clifton the Court of Appeals that a letter threatening litigation, even after the litigation was not commenced, was sufficient to award summary judgment to the Plaintiff. Plaintiff elicits testimony that he was subjected to the following adverse actions, which includes but is not limited to unfounded discipline, exclusion from precinct events, denial of promotional opportunities, denied overtime,

9

performance monitoring, and denied transfers to specialized units in retaliation for engagement in protected activity.

The Court here failed to perform the proper analysis for Plaintiff's City Human Rights Law claims which requires different analysis. Plaintiff has demonstrated pretext through conflicting testimony from Defendants and mixed motives. Here, Defendant Ge testifies that prior to arriving at Highway, Plaintiff has approved off duty employment applications. To prevail on a retaliation claim under the NYCHRL, plaintiffs must show that (1) they have engaged in protected activity, (2) their employer was aware that they participated in such activity, (3) they suffered an adverse employment action based upon their activity, and (4) there is a causal connection between the protected activity and the adverse action. (*Forrest v. Jewish Guild for the Blind*, 3 NY3d 295, 313 [2004].) A causal connection between a protected activity and an adverse employment action can be inferred from evidence that the protected activity was followed closely by discriminatory treatment. (*Noho Star Inc. v. New York State Div. of Human Rights*, 72 AD3d 448, 449 [1st Dept 2010].) "NYCHRL must, on a motion for summary judgment, be analyzed both under the *McDonnell Douglas* framework and the somewhat different "mixed-motive" framework recognized in certain federal cases (*see Bennett v. Health Mgt. Sys., Inc.,* 92 A.D.3d 29, 41, 936 N.Y.S.2d 112 [2011] [summary judgment dismissing a claim under the NYCHRL should be granted only if "no jury could

10

find defendant liable under any of the evidentiary routes—*McDonnell Douglas Corp. v. Green*, 93 S.Ct.1817 (1973)*,* mixed motive, 'direct' evidence, or some combination thereof"] ). Under *Bennett,* it is proper to grant summary judgment dismissing a claim under the NYCHRL only if the defendant demonstrates that it is entitled to summary judgment under both of these frameworks." *Melman v. Montefiore Medical Center*, 98 A.D. 3d 107, (1st Dept. 2012).

    The Court undertook none of this analysis which automatically results in remand to State Court for a proper adjudication of these claims. This exact issue, with the same defendants was remanded in the matter of *Dana Harge v. City of New York*, 2022 WL 17481819 (2nd Circ. 2022). In *Harge* this Court writes that "Although we conclude that the district court correctly entered summary judgment in the Defendants' favor on *Harge's* federal claims, his city claims are governed by different legal standards. *See Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 75 (2d Cir. 2015) ("[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing [its] provisions broadly in favor of discrimination plaintiffs to the extent that such a construction is reasonably possible." (internal quotation marks and citation omitted)). Unlike its federal analog, "the NYCHRL does not require either materially adverse employment actions or severe and pervasive conduct" to state an actionable discrimination claim; rather, an employee must simply be treated "less well" due to a protected characteristic,

11

such as race. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 114 (2d Cir. 2013) (citation omitted)."

Plaintiff was informed that through the course of his investigation that his previous applications for off duty employment were "missing." Id at 239. (A0814) Plaintiff, upon learning the paperwork was missing, immediately submitted new applications in Highway on January 30, 2016. Id. Sylvester Ge testified that this was the proper procedure for an officer who learned his previous applications went "missing." Id at 240. (A0814) Contrary to NYPD policy, Plaintiff's application was never approved nor denied and sat in limbo until his transfer out of Highway which was contrary to NYPD policy. Id at 243-254. (A0814-A0815) Defendant Ge testified that Plaintiff's application was denied due to his "failure to supervise" determination which occurred in June 2016. Id at 250.(A0815) Lipke testifies that the papers were sent to Inspector Ameri and that they did not want them until the investigation was pending. See Exhibit "2" at 92:14 (A0593. Defendant Lipke testified that "during a pending investigation that an Officer would be afforded the same benefits as every other officer. Id at 253. (A0816) Nevertheless, Defendants claim that Plaintiff's application were held in abeyance without informing him due to pending investigations against him. Id at 247. (A0815)

Fellow Sergeant, and comparator, Robert Serra submitted his off-duty employment paperwork on February 1, 2016. Id at 241 (A0814). Sergeant Serra received an approval on the same day he submitted the application. Id at 242. (A0814) Since Plaintiff never received his applications back or was told otherwise, he believed that his off-duty applications had been approved. Id at 252.(A00816)

Even though the Madouros complaint was unsubstantiated, Lipke began investigating Plaintiff for other matters including off duty employment. Id at 76. (A00778) The investigation by Defendants Lipke and Ge were outside the scope of their respective job duties. Id at 55 (A0773), 73 (A0733), 208 (A0808) and 222 (A0811).. Plaintiff was determined by Lipke and Ge to have worked unauthorized off duty employment, failed to supervise a parade detail, and violated department rules. Id at 76. Plaintiff contests the veracity of each of these findings. Id at 77-79. A00778 and 779). These findings contradict the testimony of Lipke who testified explicitly that he was aware that Plaintiff had previously submitted off-duty applications prior to coming to Highway. Id. Lipke was further aware that Plaintiff immediately submitted new applications after he was informed they were missing. Id at 239, 240. (A0814) Further, the Defendants determined that Plaintiff somehow failed to supervise police officers at a parade without even speaking to those officers. Id at 77-79. A00778 and 779). Lipke did

not conduct a proper investigation into Plaintiff and failed to follow internal procedures, nor have the Defendants exchanged investigative worksheets detailing the substance of Lipke's investigation. Id. Lipke testified that these "worksheets" were forwarded to transportation investigation. See Exhibit "2" at 127:6. A00598. Plaintiff further contests the other allegations levied against him by the Defendants accusations of nitpick violations that other employees were not disciplined over. See at 77-79 (A00778 and 779). Plaintiff suffered additional harassment which was well known throughout the Command for failing to target Harge. See generally the Affidavit of Sgt Fritz Glemaud (A00870) and at 43 of Exhibit 4. A00875. As a result of these erroneous findings, Plaintiff was recommended to be transferred out of Highway on March 31, 2016. Id at 75. Defendant Ge asked for the transfer to be expedited. Id at 256.A00816. The explanations of the Defendants conflicts as Defendant Ge admits that he investigated and subsequently disciplined Plaintiff for off duty applications he knew were timely submitted and approved. See *Stratton v. Dep't for the Aging for New York*, 132 F.3d 869, 880-81 (2d Cir. 1997) (holding that evidence of an employer's false explanation for employment action supported the jury's finding of unlawful pretext). Further, Plaintiff was similarly situated to Sergeant Serra in every material way and submitted off duty employment applications on the same date. Serra had his off duty employment application

14

promptly approved. Plaintiff has his application ignored for several months against the procedures of the NYPD. See *Stern v. Trs. of Columbia Univ.,* 131 F.3d 305, 312–13 (2d Cir.1997) (holding that evidence of defendant's deviation from ingrained normal hiring procedure demonstrated pretext).

## CONCLUSION

For all of the foregoing reasons, Defendants motion for Summary Judgment should have been denied. The District Court's decision should be reverse in its entirety, remanded for trial and whatever further relief this Court deems just and proper.

Dated:    New York, NY        Respectfully submitted,
            December 4, 2024    LAW OFFICE OF JOHN A. SCOLA, PLLC

By:_____/ s /_____
      John Scola, Esq.
      Attorneys for Plaintiff
      Valentin Khazin
      90 Broad Street, Suite 1023
      New York, New York 10004
      (917) 423-1445

## **PRINTING CERTIFICATION STATEMENT**

The foregoing brief was prepared on a computer. A proportionally spaced typeface was used, as follows:

Name of typeface: Times New Roman
Point size: 14
Line spacing: Double

The total number of words in the brief, inclusive of point headings and footnotes and pages containing the table of contents, table of citations, proof of service, Printing certificate statement, cover page certificate of compliance, or any authorized addendum containing statutes, rules, regulations, etc., is 3,439 Words.